# HARDING v. MOORE.—262 S. W. (2d) 702.

Middle Section.   June 26, 1953.

Petition for Certiorari denied by Supreme Court, October 9, 1953.

Robt. H. Polk, of Nashville, for plaintiff in error.

Moore, Crownover, Branstetter & Folk, of Nashville, for defendant in error.

HOWELL, J. This is one of three lawsuits growing out of an accident on the Murfreesboro Road in Davidson County at a point where Thompson Lane intersects the Murfreesboro Road. The accident happened about 12 o'clock on the night of September 20, 1950. Norman Harding, a son of J. W. Harding, was driving his father's automobile toward Nashville and was on the east lane of the four lane highway and the defendant was driving his truck on the west lane going south and crossed over on a paved strip between the northbound and southbound lanes of the highway. He stopped his truck and then proceeded into the northbound lane when the collision occurred.

J. W. Harding sued to recover for the damages to his Pontiac automobile.

Norman Harding, the minor who was driving his father's car, sued for personal injuries.

C. H. Moore sued J. W. and Norman Harding for damages to his truck and for personal injuries.

In the case of J. W. Harding v. C. H. Moore the jury returned a verdict of $1,750 and upon motion a new trial was granted. Upon the second trial the Court sustained a motion of the defendant made at the close of plaintiff's proof, directed a verdict for the defendant and dismissed the case. By proper procedure this case has been appealed in error to this Court and assignments of error have been filed.

In the case of Norman Harding by next friend v. C. H. Moore the jury found in favor of the defendant and the case was dismissed.

In the case of C. H. Moore v. J. W. and Norman Harding, the jury found for the defendants and this case was dismissed.

Motions for new trials were made in the last mentioned

two cases and overruled. No appeals were perfected on these cases.

The assignments of error in this case raise the question whether or not the trial Court erred in granting defendant's motion at the close of plaintiff's proof and directing a verdict for the defendant.

The Murfreesboro Highway is composed of two concrete roads of two lanes each, the east two lanes for traffic north toward Nashville and the west two lanes for traffic south, away from Nashville. There is a parkway of grass about 30 feet wide between the two roads. Thompson's lane intersects the Murfreesboro Road and ends at the east margin of the northbound lanes. There is a concrete strip across the parkway where Thompson's lane intersects.

The plaintiff's son, Norman Harding, who was driving his father's car at the time of the accident was not available to testify in person and his deposition was read. He testified in substance that he was nineteen years of age at the time of the taking of the deposition in March 1952 and that at the time of the accident he was working in Nashville on what is called a third shift from 1 o'clock A. M. until 8 o'clock A. M. and was on his way to work at about 12 o'clock Midnight and that he was driving on the northbound lane of the two lanes of traffic and toward Nashville.

He then testified as follows:

"Q. Now, as you approached the intersection of Thompson Lane, driving in a northern direction, did you notice any other vehicles as you approached that intersection? A. Yes, sir.

"Q. What was it and where was it? A. It was a truck, two and a half ton truck coming out of the in-

tersection, it was in the island between the two lanes moving out on the highway.

"Q. When you say it was moving out on the highway, what do you mean? What was moving into what lane, which side, the northbound or the southbound? A. Northbound lane.

"Q. When you first saw it was it standing still or proceeding? A. It was moving at a slow rate of speed.

"Q. Were your lights on? A. Yes, sir.

"Q. Both headlights? A. Yes, sir.

"Q. Did you give any signal? A. Yes, sir. As I approached this intersection I blew my horn and blinked my lights.

"Q. At approximately what speed were you traveling at the time you first saw this vehicle? A. I was driving 45 miles an hour.

"Q. Go ahead and state what happened then? A. Well, I blinked my lights and blew my horn, I thought the truck was going to stop, so I just slowed up a little, I didn't try to stop, and when I got right at the intersection he hit the left front fender of the car with the right-hand front of the truck."

He also said that he was about 200 feet from the truck when he first saw it approaching and it was between the northbound and southbound traffic lanes and that he could have stopped but did not because it was not "his place to stop".

The only other witness who saw the accident was Jennings Taylor who was riding a motorcycle and proceeding behind the defendant's truck south on the west lane of traffic, when defendant's truck turned to its left to cross to the east lane. The witness then testified in part as follows:

"A. The truck went up as far as Thompson Lane and Murfreesboro Road and made a left turn; the car was coming towards town at a pretty good rate of speed, the truck stopped for a few seconds, then started to make a left turn back towards town, while in the meantime I was approximately half way between the service station and the truck, about 300 feet, I will say, and the collision took place, just as well as I could see at night, the automobile's left fender hit the right front fender of the truck and tore the truck's front bumper off.

"Q. Where was the truck at the time it was hit, with reference to the north or inbound highway of the Murfreesboro Road? A. It was approximately right on the center line.

"Q. Had the truck got across the center line? A. Not to my knowledge, no, sir?

"Q. Not to your knowledge? A. No, sir.

"Q. You drive an automobile, don't you? A. Yes, sir.

"Q. How long have you been driving? A. Since I was 15.

"Q. State how fast in your opinion the automobile, the Harding automobile, was going when you first saw it? A. It was at night, and dark, of course, but to my best knowledge I would say he was going close to 50 miles an hour.

"Q. What happened after the car hit Mr. Moore's truck?

"Mr. Polk: I object to the form of the question, he can state what happened when they came in collision. He hasn't stated the automobile hit the truck, I don't believe.

"Q. Did the automobile of the plaintiff hit the truck of Mr. Moore? A. I would say the truck was stopped at the time of the collision.

"Q. It was standing still? A. Yes, sir.

"Q. Where did the automobile of Harding stop? A. When the collision occurred, it made a turn in the road, a half turn, and hit into a telephone pole his back door hit the pole.

"Q. Which side was the telephone pole on? A. On the right side of the road coming in.

"Q. What did he do to the pole, if anything? A. Broke the pole half in two.

"Q. About where were you on your motorcycle when the car and this truck collided? A. I was approximately 75 to a 100 feet on this side.

"Q. Back towards Nashville? A. Yes, sir."

Thus it is seen that the plaintiff himself testified that he was driving about 45 miles per hour at midnight and that he saw the defendant's truck about 200 feet away moving into the intersection and that he did not try to stop. His witness Jennings Taylor says that plaintiff was "going close to 50 miles an hour". It is noted that in the case of Norman Harding against this defendant for damages for personal injuries the jury found against the plaintiff and dismissed the suit.

In this case we think the negligence of the driver of plaintiff's car in driving 50 miles an hour at midnight and not making any effort to stop when he says he saw defendant's truck moving into the highway from a point 200 feet south was the proximate cause of the accident and that the trial Judge did not err in directing a verdict for the defendant.

The rule is well stated by Faw, Presiding Judge,

in the case of Patillo v. Gambill, 22 Tenn. App. 485, on page 492, 124 S. W. (2d) 272, on page 276, where it is said:

"It is a well settled rule, arising out of the constitutional right of trial by jury, that, in disposing of a motion for a directed verdict, the trial judge must take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and disregard all countervailing evidence. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 556, 249 S. W. 984; Elmore v. Thompson, 14 Tenn. App. 78, 81."

The only witnesses introduced in this case who saw the accident were the plaintiff's son who was driving plaintiff's car and Jennings Taylor whose deposition was read by plaintiff. We find no evidence of negligence on the part of the defendant, taking the most favorable view of the testimony.

The assignments of error are overruled and the judgment of the Circuit Court is affirmed.

The plaintiff in error will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.